# TOLEDO COMPUTING SCALE COMPANY *v.* GARRISON.

---

CONTRACTS; SALES; FRAUD.

1. The practice of attempting to incorporate conditions in a contract by indorsement of the same on the back or margin thereof is one not to be encouraged; and there seems to be no greater reason for holding a party bound by such an indorsement on a contract of sale of personal property, unless observed and assented to by him, than in the case of a carrier's contract for transportation. (Citing *Boering* v. *Chesapeake Beach R. Co.* 20 App. D. C. 500; 193 U. S. 442, 48 L. ed. 742, 24 Sup. Ct. Rep. 515.)

2. The mere fact that a contract presented for signature to one who is able to read and understand it fully, and who is not prevented from reading it by some artifice of the other party, is represented to amount to nothing more than a simple receipt, is not sufficient to avoid it on the ground of fraud; it will not do for him to say he did not read it, or did not know its contents. (Following *Chesapeake & O. R. Co.* v. *Howard*, 14 App. D. C. 262, 178 U. S. 153, 44 L. ed. 1015, 20 Sup. Ct. Rep. 880, and *Whiting* v. *Davidge*, 23 App. D. C. 156, and distinguishing *Donaldson* v. *Uhlfelder*, 21 App. D. C. 489, and *Purity Ice Co.* v. *Hawley Down Draft Furnace Co.* 22 App. D. C. 573.)

No. 1690. Submitted October 16, 1906. Decided November 7, 1906.

HEARING on an appeal by the plaintiff from a judgment on verdict of the Supreme Court of the District of Columbia, in an action of assumpsit.                              *Reversed.*

The COURT in the opinion stated the facts as follows:

This action was begun in a justice's court by the Toledo Computing Scale Company to recover of Bushrod T. Garrison $60, being the purchase price of scales sold to him April 27, 1905. Judgment was rendered for the plaintiff, but on appeal to the supreme court of the District and trial *de novo,* judgment was entered in favor of defendant, from which this appeal has been prosecuted. It appears from the bill of exceptions that plaintiff's agent contracted to sell the scales to the defendant at the price of $65, and there was offered in evidence a written order for the same executed by the defendant. The paper is a printed form with blanks, some of which were filled in writing by plaintiff's agent. In the upper left-hand corner appear the words in plain print, "Notice: No scales placed on trial." Then follow in very large type the words, "Order Form for Scales." The date in writing is, "Washington, D. C., April 27, 1905." It is addressed to the plaintiff, requesting it to ship to the defendant one No. 22 Scales, in consideration of which he promises to pay $65, being the price of the scales f. o. b. Toledo, Ohio. Terms: $10 on delivery; balance, $5.50 per month— Allow $5 for E. B. Scale. Certain printed conditions follow, which are unimportant in the litigation, save that upon failure

to pay installments the entire price shall become due. It concludes with the printed words: "This contract covers all agreements between the parties hereto."

Defendant admitted that no payments had been made on account of the order, and that the scales had been delivered and were then in his possession.

Defendant then testified in his own behalf, in substance as follows:

"That in April, 1905, he received a number of calls from one J. D. Lasley, who represented himself to be the agent of the plaintiff, who importuned him to purchase a set of scales from the plaintiff. That Lasley called several times, and defendant declined to buy the scales. That on April 27, 1905, Lasley called upon him when he was very busy, and tried to sell him a set of scales. The defendant told Lasley he did not wish to purchase them; whereupon Lasley stated that he would leave the scales with the defendant for thirty days' trial, and that if, at the expiration of that time, the scales were found to be satisfactory, the defendant could purchase them; if they were not satisfactory, he could remove them,—whereupon the defendant agreed to this proposition. Then Lasley drew a paper from his pocket; the same being the contract hereinbefore described, which said paper was folded in the center, the crease being under words 'dollars' (less 5 per cent being full cash settlement), which paper Lasley requested the defendant to sign; and, upon defendant asking him what the paper was, he replied that it was a receipt, showing the receipt of the scales. That he, the defendant, did not examine the paper, except that he noticed there was some blank spaces, none of which were filled in; and that he did not see any part of the paper above the line where the same was creased. That he had no idea that he was signing a contract for the sale of the scales. That it was agreed that in the event that the defendant should purchase the scales he was to pay $65 for same, $10 first payment, and balance $5.50 a month, and was to receive a credit of $5 for return of old pair of scales. That at the expiration of the thirty days, the scales not being satisfactory, he notified Lasley to remove the

same, which was not done.   That the scales are now in his possession, subject to the order of the plaintiff."

Cross-examination:

"Witness could read and write the English language, had been the proprietor of a grocery store in the city of Washington for several years prior to the signing of the paper; no fiduciary, or other relations of confidence or trust existed between Lasley or plaintiff and witness.   Witness examined contract sufficiently to see that blanks below crease on paper were not filled in; that he did not think he was signing a different piece of paper, in the physical sense, than the one in question.   That the scales are still in his possession, and his reason for signing the paper at the time he did was because he was in a hurry, and it was represented by Lasley to be a receipt."

The plaintiff moved the court to instruct the jury to return a verdict in its favor, on the ground that the evidence of defendant made out no sufficient defense.   This was overruled.

*Mr. H. Winship Wheatley,* for the appellant:

The precise point involved here was decided in *Mutual Ins. Co.* v. *Hodgkin,* 66 Me. 109, where the defendant signed certain papers, relying upon the statement of an agent as to their contents and meaning.   *Breese* v. *United States Teleg. Co.* 48 N. Y. 102, was a case where a man signed a stipulation printed on a telegraph blank without reading it, and was held bound by it. The same ruling was made in the case of *Rosen* v. *Dry Dock Co.* 7 Misc. 130 (N. Y. Feb. 5, 1894), as to a conductor who signed certain regulations of the company as to money deposited by him as security, without reading them.   *Robinson* v. *James,* 25 Mo. App. 421, is a strong case, the facts in which are more aggravated than in the case at bar.   In that case the agent who made the representations embezzled the money.   The party making the contract had opportunity to read it, but did not do so because he had left his glasses at home, and relied on the assur-

ances of the agent as to its contents.   See also *Kilbourne* v.
*King,* 6 D. C. 310, and *Upton* v. *Tribilcock,* 91 U. S. 50.

*Mr. Charles F. Diggs,* for the appellee:

The single question involved in this case is whether or not
parol evidence will be admitted not to contradict, alter, or in
any manner change the terms of a written contract, but whether
it may be shown in evidence that the signature of the defendant
to the contract, which is relied upon by the plaintiff, was secured
by the fraud of the plaintiff or his agent, either by the fraudu-
lent concealment or withholding from the defendant the whole
or part of the contract relied upon.   Whatever might have been
the old rule, it would seem that the modern decisions hold that,
where no rights of innocent third parties are invo'ved, a defend-
ant may show that his signature to a contract was secured by
the fraud of the plaintiff. 14 Am. & Eng. Enc. Law, pp. 122,
123.   This is the modern English rule.   Even those courts
which refuse to give relief to the defendant if it is shown that
he had the means at hand whereby he might have investigated
the fraudulent statements of the plaintiff, all hold that, where a
party resorting to fraud used artifice reasonably calculated to
prevent inquiry, they will offer relief.   Id. p. 123.

It will be seen that there was artifice used by Lasley when he
folded the paper containing the contract in such a manner as to
obscure from the vision of the defendant that part of the paper
above the crease, which, if it had been seen, would have put
him on his guard and acquainted him with the true purport of
the instrument.

In addition to this the evidence discloses the fact that not
only did Lasley make the false representations and by artifice
conceal a material part of the paper, but at the time the defend-
ant was very busy about his duties, and that, when coupled with
the conduct of Lasley is, we submit, a complete answer to this
suit.   It would seem that the defendant might well rely solely
upon the first case cited by the appellant as sufficient authority
to show the correctness of the ruling of the trial court.

Mr. Chief Justice Shepard delivered the opinion of the Court:

The amount in controversy is small, but the principle involved in its determination is an important one. After full consideration we are of the opinion that the court erred in not instructing the jury to find for the plaintiff.

In his testimony the defendant did not pretend that the execution of the contract or order was obtained upon the condition that it was not to take effect until the occurrence or performance of a precedent, independent condition, as was the case in *Donaldson* v. *Uhlfelder,* 21 App. D. C. 489, 493. Nor does his testimony present the case of a separate oral agreement concerning a matter about which the contract is silent, and that is not inconsistent with its express terms; and where, also, there are circumstances from which it may fairly be inferred that the instrument executed was not intended to be a complete and final statement of the whole transaction and agreement between the parties. See *Purity Ice Co.* v. *Hawley Down Draft Furnace Co.* 22 App. D. C. 573, 592, 59?, where the question is considered, though not expressly decided.

In this consideration, it is proper to remark that we attach no importance to the printed indorsement of notice that "no scales are placed on trial," for it is not made one of the stipulations of the order that was executed. Under some circumstances, such an indorsement might possibly have some weight as tending to show notice of limitation of the powers of the selling agent; but no such question arises here. The practice of attempting to incorporate conditions in a contract by indorsement of same upon the back or any other part thereof is one not to be encouraged; and there seems to be no greater reason for holding a party bound by such indorsement on a contract of this nature, unless observed and assented to by him, than in the case of a carrier's contract for transportation. *Boering* v. *Chesapeake Beach R. Co.* 20 App. D. C. 500, 510, 193 U. S. 442, 449, 48 L. ed. 742, 744, 24 Sup. Ct. Rep. 515. This point, however, is not directly involved.

The defendant's evidence does not tend to show that there was any actual mistake in fact in the terms of the contract, or fraud in procuring his signature. While he said that the blanks in the paper had not been filled at the time of its execution, with the writing now shown therein, yet the written words are in complete accord with his own statement of the terms of payment; namely, that the purchase price was $65; that $10 were payable on delivery, and the remainder at the rate of $5.50 per month; and that his old scales were taken in part payment at the price of $5, thereby reducing the first payment one half. Moreover, these terms are inconsistent with the condition that he seeks now to incorporate into the contract; namely, that he was to take the scales on trial for thirty days, with the privilege of return if not satisfactory. By that condition he would be relieved of the express promise to pay $10 upon the delivery of the scales.

The single fact of imposition upon which he relies is that the plaintiff's agent represented the order to be a receipt. It appears, nevertheless, that the paper containing the general terms of the sale, which he admits, was presented to him for signature; that he was able to read it, and there was nothing done to prevent his doing so. His only excuse for not reading it is that he was in a hurry at the time. The mere fact that a contract presented for signature to one who is able to read and understand it fully, and who is not prevented from reading it by some artifice of the other party, is represented to amount to nothing more than a simple receipt, is not sufficient to avoid it on the ground of fraud. Something more is required to warrant such a finding. *Chesapeake & O. R. Co.* v. *Howard,* 14 App. D. C. 262, 294, 178 U. S. 153, 167, 44 L. ed. 1015, 1020, 20 Sup. Ct. Rep. 880.

As was said in *Upton* v. *Tribilcock,* 91 U. S. 45, 50, 23 L. ed. 203, 205: "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if

he will not read what he signs, he alone is responsible for his omission."

In a recent case in this court, where the attempt was made to escape the obligation of a contract on the ground that it was represented to be something different from what it was, it was said by Mr. Justice Morris: "But the paper was open to the appellant for examination; and if he signed it, as he says he did, without due examination, he has only himself to blame for his neglect to exercise due care in the premises." *Whiting* v. *Davidge,* 23 App. D. C. 156, 165.

For the reasons given, the judgment must be reversed, with costs, and the cause remanded for another trial in accordance with this opinion.                                            *Reversed.*